**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 19 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

NANCY J. HUKKANEN-
CAMPBELL,

    Petitioner - Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE,

    Respondent - Appellee.

No. 00-9030

---

**APPEAL FROM THE DECISION OF THE**
**UNITED STATES TAX COURT**
**(T.C. Docket No. 12371-98)**

---

Russell R. Young (Roger J. Jones with him on the briefs) of Mayer, Brown &
Platt, Chicago, Illinois, for Petitioner-Appellant.

Tamara W. Ashford (Richard Farber and Kenneth W. Rosenberg on the brief),
Tax Division, Department of Justice, Washington, D.C., for Respondent-Appellee.

_____

Before **KELLY** and **McKAY**, Circuit Judges, and **BROWN**, Senior District
Judge.[*]

_____

**McKAY**, Circuit Judge.

---

    [*]Honorable Wesley E. Brown, Senior United States District Judge for the
District of Kansas, sitting by designation.

_____

Petitioner prevailed in a Title VII lawsuit against her former employer. The defendant in that action paid Petitioner $150,000 in partial satisfaction of the judgment. The $150,000 payment was issued jointly to Petitioner and her attorneys. She received $76,600.75 of the settlement; her attorneys retained the remaining $73,399.25 as legal fees.

Originally, Petitioner reported the entire $150,000 as "Other Income" on her 1993 federal income tax return. She also claimed an itemized deduction for the legal fees. In 1995, she filed an amended tax return in which she excluded the $150,000 payment from her income entirely, claiming a refund of $20,075. The Commissioner denied the refund and issued to her a deficiency notice in the amount of $17,402. This deficiency resulted from the application of the Alternative Minimum Tax ("AMT"). The AMT precludes various miscellaneous itemized deductions including fees paid to attorneys by taxpayers.

Petitioner challenged the deficiency in Tax Court arguing that the proceeds of the lawsuit were excluded from income under § 104(a)(2). Alternatively, she argued that the portion paid to her attorneys pursuant to her contingent fee arrangement was not includable in gross income. The Tax Court held that the entire $150,000 was subject to taxation and that the amount paid to her attorneys qualified as a miscellaneous itemized deduction. However, since the computation

of the AMT disallows deductions for attorney fees, the Tax Court upheld the $17,402 deficiency. Petitioner timely appealed. We have jurisdiction under 26 U.S.C. § 7482(a)(1).

The current dispute has increased meaning because of the AMT's treatment of attorney fees. If the AMT did not apply, any fees Petitioner paid to her attorneys would qualify as a deductible expense. However, under the AMT's provisions, certain miscellaneous deductions, including attorney fees, are eliminated.

Petitioner argues that the Internal Revenue Code does not require that the payment made to her attorneys be included in her income. Section 61(a) of the Code defines gross income as "all income from whatever source derived." 26 U.S.C. § 61(a). The $150,000 she recovered in her Title VII suit clearly constitutes income from "whatever source derived."

We reject Petitioner's argument that she lacked the requisite control and beneficial ownership of the funds paid directly to her attorney. Regardless of the label placed on the contract between Petitioner and her attorneys, the end result is that the recovery of legal fees benefitted her. This recovery permitted Petitioner to discharge the personal obligation owed to her attorneys. See Coady v. Commissioner, 213 F.3d 1187, 1191 (9th Cir. 2000); Baylin v. United States, 43 F.3d 1451, 1454 (Fed. Cir. 1995).

Petitioner's argument that the effect of her contingent fee agreement and the Missouri lien statute alters the analysis is equally unavailing. Petitioner points to rulings in other circuits holding that contingent fees paid directly to attorneys are not taxable income based on the applicable attorney lien statutes. See, e.g., Foster v. United States, 249 F.3d 1275 (11th Cir. 2001) (Alabama statute); Estate of Clarks v. United States, 202 F.3d 854 (6th Cir. 2000) (Michigan statute); Cotnam v. Commissioner, 263 F.2d 119 (5th Cir. 1959) (Alabama statute). However, the majority of the circuits have rejected this argument. See, e.g., Kenseth v. Commissioner, 259 F.3d 881 (7th Cir. 2001) (Wisconsin statute); Young v. Commissioner, 240 F.3d 369 (4th Cir. 2001) (North Carolina statute); Benci-Woodward v. Commissioner, 219 F.3d 941 (9th Cir. 2000) (California statute); Coady v. Commissioner, 213 F.3d 1187 (9th Cir. 2000) (Alaska statute); Baylin v. Maryland, 43 F.3d 1451 (Fed. Cir. 1995) (Maryland statute).

Furthermore, the cases Petitioner relies upon are readily distinguished. As the Tax Court correctly noted, the Missouri lien statute, unlike the Alabama and Michigan statutes, does not create a proprietary interest in the recovery on the attorney's behalf. Instead, the Missouri statute simply operates as a manner of ensuring payment to the attorney. As the Seventh Circuit recently observed, an attorney with a lien on settlement "is no different in this respect from any other

-4-

trade creditor stiffed by his debtor." <u>Kenseth</u>, 259 F.3d at 884.

Petitioner urges us to adopt a uniform standard that contingent fee payments made directly to attorneys for their services should not be taxable to successful plaintiffs. She advocates a standard independent of "the intricacies of an attorney's bundle of rights against the opposing party under the law of the governing state." Aplt. Brief at 25 (quoting <u>Srivastava v. Commissioner</u>, 220 F.3d 353, 364 (5th Cir. 2000). Her reliance on <u>Srivastava</u> is misplaced. In <u>Srivastava,</u> the Fifth Circuit specifically stated, "[W]ere we to decide this case as an original matter, we might apply the anticipatory assignment doctrine to hold that contingent fees are gross income to the client. We do not, however, decide this case on a clean slate, but must follow the contrary approach endorsed in <u>Cotnam</u>." <u>Srivastava</u>, 220 F.3d at 363. Not only has the Fifth Circuit's ruling in <u>Srivastava</u> been widely criticized, <u>see</u>, <u>e.g.</u>, Benjamin C. Rasmussen, Note, <u>Taxation of an Attorney's Contingency Fee of a Punitive Damages Recovery: The Srivastava Approach,</u> 15 BYU J. Pub. L. 301 (2001), but we, unlike the Fifth Circuit, decide this case on a clean slate.

We agree with Petitioner that a universal standard independent of the "intricacies of any attorney's bundle of rights," or the unique provisions of a particular state's attorney lien statute is desirable. However, her proposed solution is inconsistent with the Tax Code. The correct approach is much more

-5-

simple. Petitioner's judgment is a recovery of lost income; the attorney fees she paid represent expenses incurred in generating that income. Like any other taxpayer, Petitioner must report the entire amount as gross income, and, but for the AMT's provisions, she would be allowed to deduct her attorney fees as an expense. The Tax Code mandates this result irrespective of a particular state's attorney lien statute's provisions.

Finally, Petitioner invites us to judicially overturn what she terms an "anomalous and unjust result" created by the application of the AMT to the present case. We must reject this invitation. The perceived inequities of the AMT are simply not at issue here. Congress, not this court, must correct any shortcomings in the AMT's application.

The Tax Court's decision is **AFFIRMED**.